**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **PAUL JOSEPH IZZO,** | : | |
| Plaintiff, | : | |
| | : | |
| **v.** | : | **Civil Case Number** |
| | : | **3:17-cv-02060 (VLB)** |
| | : | |
| **SANDY ALEXANDER, INC.,** | : | |
| Defendant. | : | **September 14, 2018** |
| | : | |
| | : | |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 14] AND TRANSFERRING CASE TO DISTRICT OF NEW JERSEY

Plaintiff Paul Joseph Izzo ("Plaintiff" or "Izzo") brings this action for age discrimination pursuant to Age Discrimination in Employment Act of 1967, codified at, 29 U.S.C §§ 621 - 634 ("ADEA"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, et seq., ("CFEPA"). He alleges that Defendant Sandy Alexander Inc., ("SA or "Defendant") deprived him of commissions because he is over 40 years of age and that SA retaliated against him by terminating him after he complained of discrimination. Defendant has moved to dismiss this action for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (Dkt. No. 14). The Plaintiff opposes this motion. (Dkt. No. 15). For the following reasons, Defendant's Motion to Dismiss for lack of personal jurisdiction is GRANTED IN PART AND DENIED IN PART, and the Court transfers this case to the District of New Jersey.

## I.    Background

Plaintiff, Paul Joseph Izzo, is a 66-year-old male and a resident of Newtown, Connecticut. (Compl. ¶ 2). From September 18, 2014 until August 19, 2015,

Plaintiff worked for SA as a "Sales and Marketing Executive." (Compl. ¶¶ 2, 14). SA is a corporation that is incorporated in Delaware and has its principle place of business in Clifton, New Jersey. (Dkt. 14-1 at 2). SA is a large printing company, which Plaintiff claims employs over 400 employees across the United States. (Compl. ¶ 13). Plaintiff contends that an unspecified number of these employees work out of home offices in Connecticut. (Compl. ¶ 13).

Michael Graff ("Graff") is the Chief Executive Officer ("CEO") at SA. (Compl. ¶ 11). Plaintiff alleges that Graff was originally interested in hiring Plaintiff because of Plaintiff's established clientele and accounts. (Compl. ¶ 15). During Plaintiff's term of employment at SA, Plaintiff claims that he worked primarily out of his home office in Newtown, Connecticut and that he sold specialty printing services and products for SA to corporate clients in Connecticut and other states. (Compl. ¶ 17; Dkt. 15 at 2). The Connecticut based companies that Plaintiff worked with during his employment at SA include but are not limited to: Ann Taylor, World Wrestling Entertainment ("WWE"), Mitchell's, Phillips Consumer in Stamford, Conair in Greenwich, Subway in Milford, MBI in Norwalk, Epsilon Agency in Wilton, Metlife in North Haven, Marlin Company in Wallingford, Swiss Army in Monroe, Breiltling Watch USA in Wilton , Raveis, Logic Source Inc., in Norwalk, Nestle Waters in Stamford, and Adare Inc., in Ridgefield (Dkt. 15-2 at 4, 12, 15-17, 19, 22).

Plaintiff has attached evidence including invoices and travel reimbursements, which suggest that SA had some business ties to Connecticut. These invoices include eight purchase orders from WWE. (Dkt. 15-2 at 27-34).

Additionally, the submitted reimbursement requests and approvals for travel indicate Plaintiff was on "sales calls" and had meals with clients in Connecticut, New York, New Jersey, and Florida. (Dkt. 15-2 at 15-22).

Because Plaintiff claims that he worked from home in Connecticut, he required a partner to help manage duties at the New Jersey facility. (Compl. ¶¶ 21, 22). Nicholas Stillo ("Stillo"), who is approximately ten years younger than Plaintiff, served as Plaintiff's partner. (Compl. ¶¶ 21, 22, 25). Plaintiff and Stillo agreed to split commissions evenly, and Graff approved of the joint account agreement. (Compl. ¶¶ 22-23).

The Defendant moves to dismiss pursuant to Rule 12(b)(2), arguing that its contacts with Connecticut are too tenuous to subject it to this Court's jurisdiction. (Dkt. No. 14).

II.    Legal Standard

A civil action should be dismissed if the Court lacks personal jurisdiction over a party. *See Fed. R. Civ. P.* 12(b)(2). "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction over the defendant." *Am. Wholesalers Underwriting. Ltd. V. AM. Wholesale Ins. Gro., Inc.*, 312 F. Supp. 2d 247, 251 (D. Conn. 2004) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction and by making a prima facie case of jurisdiction." *Id.* (citing, *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). To establish a prima facie case of personal

jurisdiction, a plaintiff must: (1) allege facts sufficient to show that the forum state's long-arm statute reaches a defendant; and (2) establish that the court's exercise of jurisdiction will not violate due process. *Id.*; *Chirag v. MT Marida Marguerite Schiffarhrts*, 933 F. Supp. 2d 349, 352 (D. Conn. 2013), *aff'd,* 604 Fed. App'x. 16 (2d Cir 2015). "When considering a Rule 12(b)(2) motion, the court construes any factual averments and resolves all doubts in the plaintiff's favor" *Am. Wholesalers Underwriting*, 312 F. Supp. 2d at 251 (citing *CutCo Indus., Inc., v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). All undisputed facts in the complaint are accepted as true and where facts are contested, the court is to draw all reasonable inferences in favor of the plaintiff. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

### III. Discussion

#### a. Long-arm statute

The Court first addresses whether Connecticut's long-arm statute, Conn. Gen. Stat. § 33-929(f) reaches SA. The long-arm statute provides:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:
> (1) Out of any contract made in this state or to be performed in this state;
> (2) Out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or orders relating thereto were accepted within or without the state;
> (3) Out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state *and are so used* or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or

>    **(4) Out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.**

Conn. Gen. Stat. § 33-929(f). Plaintiff does not assert that a specific subsection of § 33-929(f) applies in his case, so the Court addresses each subsection in turn.

Under section 33-929(f)(1), a contract is made "when and where the last thing is done which is necessary to create an effective agreement." *H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, 296 F. Supp. 2d 234, 239 (D. Conn. 2003) (quoting *Chemical Trading, Inc., v. Manufacture de Produits Chimiques de Tournan*, 870 F. Supp. 21, 24 (D. Conn. 1994). Plaintiff attaches to his briefing an employment contract which contains provisions relating to severance and commissions. (Dkt. No. 14-4). While Plaintiff contends that SA withheld the severance and commission that would presumably have been owed to him under the contract, (Compl. ¶ 48), Plaintiff does not assert a breach of contract claim. Plaintiff's age discrimination cause of action, therefore, cannot be understood to arise out of the employment contract. Moreover, even if the claim did arise out of the contract, Plaintiff's complaint does not allege that the contract was signed or became effective in Connecticut, and it is not clear from the face of the contract where the parties executed it. Plaintiff, therefore, cannot establish that § 33-929(f)(1) is met.

The Court next considers whether the requirements of § 33-929(f)(2) are satisfied. Plaintiff alleges in his complaint that SA repeatedly conducted and solicited business in Connecticut. (Compl. ¶ 9). In his affidavit, Plaintiff specifies that the Connecticut companies SA worked with includes, WWE, Conair, Nestle,

Phillips Consumer, LogicSource, Swiss Army, Subway, MBI, and others. (Dkt. 15-2 ¶ 20). Additionally, Plaintiff alleges that he and other SA employees worked from their residences in Connecticut and that SA reimbursed Plaintiff's home office and traveling expenses. (Compl. ¶ 13). Plaintiff filed travel reimbursement receipts, which state that Plaintiff traveled to multiple businesses to make "sales calls" over forty times. (Dkt. 15-2 at 15-22). For purposes of this decision, the Court assumes Plaintiff traveled from his home in Connecticut. Defendant also reimbursed Plaintiff's travels in Florida, New York, and New Jersey, which diminishes the significance of traveling done in Connecticut. (*See* Dkt. 15-2 at 15-22). Defendant contends that it maintained no offices or employees in Connecticut. (Dkt. 14-1 at 2). Additionally, SA states that only about .001% of its business was conducted in Connecticut. (Dkt. 14-1 at 13).

Section 33-929(f) requires not only that a corporation have contacts in Connecticut, but also that the cause of action arise out of those contacts. While Plaintiff has sufficiently alleged that SA solicited business in Connecticut, Plaintiff has not alleged that his age discrimination claims were specifically related to this Connecticut business activity. Plaintiff has therefore failed to meet his burden with respect to § 33-929(f)(2). *See Guthrie v. Ciba-Geigy, Ltd.*, 620 F. Supp. 91, 92 (D. Conn. 1984) (stating that conducting business in Connecticut is insufficient to give rise to personal jurisdiction where the alleged age discrimination does not arise out of these Connecticut business contacts).

The Court next addresses whether Plaintiff alleges, pursuant to § 33-929(f)(3), that his cause of action arose out of SA's distribution of orders and

marketing materials in Connecticut. Connecticut courts have held that "if the defendant knew or reasonably should have known that its product would find its way into the stream of commerce in Connecticut, then it would not be unreasonable for it to expect to defend action in Connecticut." *Tomra of North America Inc. v. Environmental Products Corp.*, 4 F. Supp. 2d 90, 93 (D. Conn. 1998). In this case, Plaintiff attached purchase orders from WWE in Stamford, Connecticut to his brief. (Dkt. 15-2 at 27-34). However, while the invoices indicate that WWE's headquarters are located in Connecticut, it is not clear whether the ordered products were ever intended for use in Connecticut. It is also unknown if the products were delivered to Connecticut or used in Connecticut. The majority of the purchase orders do not specify a location for the products' use. In fact, only two of the orders have a delivery location; both were delivered to Brooklyn, New York. (Dkt. 15-2 at 27, 32). The documents, therefore, do not provide a concrete intention for SA's materials to be distributed or used in Connecticut. Additionally, Plaintiff has not alleged that the specific purchases detailed in the WWE invoices represent sales for which Plaintiff was unfairly denied a commission on the basis of his age. Therefore, Plaintiff fails to meet the requirements of § 33-929(f)(3), both because he did not allege that any of SA's sales in Connecticut were for products that were intended for use in Connecticut and because he has not alleged that he was unfairly denied commissions for any such sales.

Under § 33-929(f)(4), a tortious act in the forum state allows the long-arm statute to reach a foreign corporation. "Connecticut courts have generally held

that a communication whose content may be considered tortious that is sent into Connecticut from out of state constitutes a 'tortious act within the state' for purposes of Connecticut's long-arm statute." *Delcath Systems, Inc. v. Enney*, No. 3:05-CV-1281 (JCH), 2006 WL 1525986, at *2 (D. Conn. 2006). Plaintiff asserts that he complained to HR about Graff and Stillo discriminating against Plaintiff based on his age. (Compl. ¶ 41). The complaint does not specify how Plaintiff made his statement to HR or where he or members of HR were located when Plaintiff contacted HR. Plaintiff then alleges that as a result of complaining to HR, Defendant retaliated against him by terminating his employment. (Compl. ¶ 76-78). Fisher terminated Plaintiff via telephone shortly after he complained of age discrimination. (Compl. ¶ 44).

In an affidavit attached to his brief, Plaintiff states that he was in Connecticut at the time he was terminated. (Dkt. 15-2 ¶ 87). Plaintiff does not make these allegations in his complaint, and it is not clear that the Court can consider this affidavit as incorporated into the complaint by reference. "In the context of ruling on a motion to dismiss, courts are generally limited to considering facts alleged in the complaint, any written instrument attached to a complaint as an exhibit pursuant to Federal Rule of Civil Procedure 10(c), and any document incorporated into a complaint by reference." *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 222 (S.D.N.Y. 2018). The Second Circuit considers "written instrument" to include, for the purposes of Rule 10(c), only "legal document[s] that define rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Id.* at 222-23.

(quoting *Smith v. Hogan*, 794 F. 3d 249, 254-55 (2d Cir. 2015)) (refusing to consider plaintiff's affidavit attached to the complaint because it did not "evidenc[e] legal rights or duties" nor "set[ ] forth the legal basis for [the] claims").

In order for a document to be incorporated into a complaint by reference, a plaintiff must "rely on the terms and effect of the document in drafting the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New* York, 458 F.3d 150, 156 (2d Cir. 2006)). The mention of a document in the complaint is not sufficient to incorporate the document into the complaint by reference. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (Court refused to consider affidavit and deposition in ruling on a motion to dismiss because neither document was integral to the complaint).

Even if the Court can consider this affidavit, terminating Plaintiff's employment by telephone call to Connecticut is insufficient to give rise to long-arm statute jurisdiction. *See Tregaskis v. Wine Enthusiast* Companies, No. CV950067373, 1995 WL 447881, at *4 (Conn. Super. Ct. 1995) (Connecticut long-arm statute did not reach a New York employer that called the plaintiff in Connecticut to terminate his employment). Plaintiff has not satisfied the requirements of § 33-929(f)(4). Accordingly, Plaintiff has not established that the Connecticut long-arm statute reaches his claims.

    **b.  Due Process**

Critically, even if a single telephone call was sufficient and Plaintiff had properly alleged that the long-arm statute reaches his claims by virtue of that fact, he has not demonstrated that the Court's exercise of jurisdiction over the Defendant satisfies the requirements of Due Process. "The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Licci ex rel. Licci v. Lebanese Canadian Bank,* SAL, 673 F.3d 50,60 (2d Cir. 2012).

i. Minimum Contacts

The "minimum contacts" inquiry requires the Court to consider whether the Defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *See Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 495 (D. Conn. 2006) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "A commercial actor need not have a physical presence in a state to establish the necessary minimum contact, so long as the actor's efforts are directed at the forum state." *Chirag*, 933 F. Supp. 2d at 354. A defendant's conduct and contacts with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (Holding that courts must consider a totality of the circumstances to determine whether a defendant's contacts with the forum state justify the exercise of personal jurisdiction).

Assuming the Plaintiff's complaint is true, SA's contacts with Connecticut are too attenuated to give rise to personal jurisdiction. First, the Defendant is not registered to do business in Connecticut. (Dkt. 14 at 3). SA is incorporated in Delaware and has its principle place of business in New Jersey. (Dkt 14-1 at 2). Second, Plaintiff has not alleged that SA's activities in Connecticut comprise a significant proportion of its overall business. For example, while Plaintiff contends that SA employs Connecticut citizens as sales representatives, in his capacity as a salesman he made sales call nationwide and he worked from his office in Connecticut.  He does not state what proportion of SA's 400-person workforce may have maintained home offices in Connecticut, whether Defendant equipped the offices, whether they worked from home at SA's direction or with SA's acquiescence. (Compl. ¶ 13). Plaintiff does not allege Defendant provided a worksite or support staff in Connecticut for the sales representatives who lived in Connecticut and performed work at their homes.  Plaintiff also alleges that he performed "frequent sales presentations at various potential customer locations" and made trips to SA's New Jersey and New York City offices. (Compl. ¶ 20). He does not allege in the body of his Complaint that these sales presentations were in Connecticut. Instead, Plaintiff submitted reimbursement records with his opposition motion. (Dkt. 15-2 at 15-22). While over fifty meetings with several Connecticut-based businesses are logged, not all of these records indicate that these meetings took place in Connecticut, or that Plaintiff was traveling from his Connecticut home to attend these meetings; they could just as easily support Defendant's assertion in its motion that Plaintiff usually worked from the New

Jersey office. Indeed, the records show frequent reimbursement of Plaintiff's travels in and from New Jersey, New York, and Florida. (Dkt. 15-2 at 15-22).

Defendant offers evidence in its motion that only "one-hundredth of one percent" of SA's annual revenue is earned from Connecticut sources. (Dkt. 14-1 at 13). Defendant also paid employment taxes for Plaintiff in New Jersey. The contacts the Defendant have are not significant enough for Connecticut to satisfy the minimum contacts analysis.

### ii. Reasonableness

Even if Plaintiff could show that SA had sufficient minimum contacts, he has not satisfied the "reasonableness" inquiry. The "reasonableness" inquiry requires the Court to decide "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (quotations omitted). The Supreme Court has held that courts must evaluate the following factors as part of this analysis: "(1) the burden that the exercise of jurisdiction will impose on the defendant[s]; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff['s] interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 113-14 (1987)).

The Court considers each of these factors in turn. First, the burden for the Defendant of litigating in Connecticut is higher than defending in New Jersey. The Defendant has its principle place of business in New Jersey and an additional office in New York City. However, both of these offices are within reasonable driving distance to Connecticut. While litigating in Connecticut is less convenient, it does not present an unendurable burden. Second, both Connecticut and New Jersey have an interest in the disposition of this case. While New Jersey has a strong interest in the viability of business entities resident in the state, Connecticut also has an interest in ensuring that its citizens are afforded fair treatment by out-of-state employers. Third, the Plaintiff's home state of Connecticut is most convenient for him, as evidenced by his decision to file suit in Connecticut. Fourth, the judicial systems interest in obtaining the most efficient resolution of the controversy favors New Jersey since the principle place of business is located there and key witnesses including Graff and Stillo are employed there. Furthermore, many of the events at issue occurred in New Jersey where Plaintiff called HR, SA allegedly retained Plaintiff's commission, and Graff allegedly gave Plaintiff's accounts to other employees as a form of age discrimination. The fifth factor favors neither Connecticut nor New Jersey.

Based on the circumstances present in this case, the balance of these factors favors litigation in New Jersey. The complaint and the briefing suggest that Plaintiff worked from New Jersey on a frequent basis, while SA's business in Connecticut was relatively limited. Moreover, Plaintiff has not alleged that SA's business activities in Connecticut are connected to his age discrimination.

Importantly, most of the evidence and witnesses are located in New Jersey. Because the exercise of jurisdiction over the Defendant in Connecticut is inconsistent with due process, the Court may not exercise personal jurisdiction over the Defendant.

IV.     Transfer of Venue

While the Court finds that the exercise of personal jurisdiction over the Defendant would be improper, the interests of justice favor transfer over dismissal. While neither party has requested transfer in lieu of dismissal, the Court may transfer venue *sua sponte*. *See Novitaz, Inc. v. InMarket Media, LLC*, No. 3:16-CV-00387 (VLB), 2016 WL 10405919, at *1 (D. Conn. 2016).

Because the requirements for personal jurisdiction and venue are identical for corporations, (*See* 28 U.S.C. § 1391(d)), Connecticut is an improper venue for this case. Under 28 U.S.C. § 1406(a), a district court has the option of either dismissing or transferring an improperly filed case to "any district in which it could have been brought" if the transfer is "in the interest of justice." *WorldCare Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 364 (D. Conn. 2011).

In determining where this case should be transferred, the Court must analyze where it could have originally been brought. 28 U.S.C. §1391(b) states that a civil action may be brought by an individual in (1) "a judicial district in which any defendant resides…" or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…" For purposes of defendant corporations, venue is proper, pursuant to 28 U.S.C. 1391(d), in a judicial district in which a defendant corporation is subject to personal

jurisdiction. Since Connecticut does not have personal jurisdiction over SA, venue does not lay in Connecticut. However, Plaintiff could have brought this case in the district of New Jersey where SA has its primary place of business and is subject to personal jurisdiction.

Furthermore, New Jersey is where a majority of the facts giving rise to the claim occurred. Plaintiff alleges that SA and its executives withheld commission from him, discriminated against him on the basis of age, and retaliated against him. Specifically, Plaintiff asserts that Graff and Stillo "conspired to deprive [Plaintiff of] his commissions" and "purposefully hid" or "altered" invoices from Plaintiff so that he would not get credited for commissions." (Compl. ¶¶¶ 28, 29, 32). Additionally, Plaintiff contends Graff and Stillo "deprived Plaintiff of his commissions" and did not allow Plaintiff to "fairly earn his commission." (Compl. ¶¶ 29, 30). Furthermore, Plaintiff complains that Graff and Stillo "actively blocked communications to Plaintiff regarding his accounts." (Compl. ¶ 38). These alleged actions which give rise to the employment discrimination claim all occurred in New Jersey, at SA's principle place of business and where Graff and Stillo worked. (Compl. ¶¶ 12, 21). Therefore, this action could have been brought in New Jersey pursuant to 28 U.S.C. 1391.

Because the proper venue is obvious to the Court, transferring this case is in the interest of justice. *See Metropa Co. v. Choi*, 458 F. Supp. 1052, 1056 (S.D.N.Y. 1978) (Courts transfer rather than dismiss where proper venue is clear). Transfer of this action will promote judicial efficiency by allowing Plaintiff to have his day in court without re-filing his actions and pleadings. The Court cannot

recognize any undue burden on the Plaintiff by transferring this case to New Jersey. The Plaintiff stated that he regularly traveled to New Jersey in his complaint. (Compl. ¶ 20). Additionally, all key witnesses are located in New Jersey. The transfer of this case is therefore in the interest of justice. *See Fresca v. Arnold*, 595 F. Supp. 1104 (E.D.N.Y. 1984) (transferring venue based on lack of hardship on nonmoving party and convenience to witnesses).

## V.    Conclusion

Because this claim could have been brought in New Jersey pursuant to 28 U.S.C. § 1391 and the transfer of the case is in the interest of justice, transfer is proper under 28 U.S.C. § 1406(a).

IT IS SO ORDERED.

*Vanessa Lynne Bryant*  Vanessa Bryant
2018.09.14 15:42:34 -04'00'

**Hon. Vanessa L. Bryant**
**United States District Judge**

Dated at Hartford, Connecticut: September 14, 2018